Affirmed and Memorandum Opinion
filed August 2, 2011.

 

In The

Fourteenth
Court of Appeals



NO. 14-10-00221-CR



KEITH
WASHINGTON,
Appellant 

v.

The
State of Texas, Appellee 



On Appeal from
the County Criminal Court at Law No. 2

Harris
County, Texas

Trial Court
Cause No. 1544570



 

MEMORANDUM
OPINION

Appellant Keith Washington appeals his conviction for misdemeanor
driving while intoxicated (DWI).  After the jury found him guilty, the trial
court assessed punishment at 180 days in the Harris County Jail and a $500
fine, suspended his sentence, and placed him on community supervision for one
year.  In four issues, appellant contends the evidence is legally insufficient
to support his conviction and jury charge error deprived him of due process, due
course of law, and a fair and impartial trial.  We affirm.

Background

On August 16, 2008, a Houston police officer responded
to a police radio broadcast concerning a vehicle with broken wheels being
driven in a reckless manner on Gessner, a public street in Harris County,
Texas.  Within two minutes of receiving the radio dispatch, the officer found a
vehicle matching the description in the broadcast, a Ford truck, in a front
yard on the east side of Gessner facing the street.  He observed that three of the
wheels on the truck were bare metal that was cracked and broken in several
places.  A license plate check revealed the truck was registered to appellant. 


The officer witnessed the driver’s side door of the
truck open, and appellant, the only occupant, slid down from the driver’s seat
to the ground.  The officer also observed that the truck “[a]ppeared to have
struck the curb on the east side of Gessner and spun up to the front yard,” its
wheels had “[d]ug fairly large ruts in the front yard,” and “[t]he engine was
still warm, [and had] obviously recently been running.”  He did not see any skid
marks on the street.  

Appellant was unresponsive to the officer’s questions
and unable to speak intelligibly or stand without assistance.  The officer supported
appellant, walked him to a nearby bus stop bench, and helped him sit.  Appellant
attempted to hand the officer a credit card when asked to produce his driver’s
license and could not correctly identify his driver’s license among the other
cards in his wallet.  Appellant also smelled strongly of alcohol, slurred his
speech, squinted his eyes so that they were almost closed, and could not answer
questions coherently.  The officer opined that, based on his training and
experience, the source of appellant’s impairment was alcohol, likely in
combination with some other chemical.  He further opined that appellant was
intoxicated.

Because of appellant’s apparent intoxication, the
officer requested assistance of a designated DWI unit, but none was available. 
He then called for and received assistance from another officer, who was
trained in administration of field sobriety tests.  That officer observed that
appellant had passed out in the back seat of the patrol vehicle and smelled
strongly of alcohol.  The second officer tried to ask a few questions, but appellant
was “extremely incoherent,” unable to answer any questions, and could not
perform any field sobriety tests.  It then took the strength of both officers
to transfer appellant to the second officer’s car, as appellant could not
walk.  The second officer opined that appellant was intoxicated as a result of
consuming alcohol and had lost his mental faculties.

The second officer transported appellant to a police
facility, where a third officer, who was trained in administration of field
sobriety tests and was a drug recognition expert, examined appellant.  The
third officer noted that appellant was staggering and had very slow responses. 
The officer asked appellant if he had been drinking and driving, and appellant
answered, “I think so,” to both questions.  The officer then administered
several field sobriety tests to appellant, including the Romberg balance test,[1] the
walk-and-turn test, and the one-legged stand test.  Appellant showed signs of
impairment when performing all three tests and exhibited four of four clues of
intoxication on the one-legged stand test.  The third officer then read
appellant his rights, gave him a “D.I.C. 24” form, which appellant did not
sign,[2]
and requested he submit to a breath test, which he apparently refused to take. 
These interactions between the third officer and appellant were recorded on video
and shown to the jury.

Based on his training, the third officer concluded that
appellant had lost the normal use of his physical and mental faculties.  The
officer was unable to evaluate appellant for drug use because appellant refused
to take a breath test that could have eliminated alcohol as a source of
appellant’s intoxication: alcohol causes similar behavior to that induced by
some drugs.  The officer thus concluded appellant was intoxicated by some sort
of depressant.

Sufficiency of the Evidence

In his first three issues, appellant challenges the
legal sufficiency of the evidence to support his DWI conviction, alleging that the
State did not establish that he was operating a motor vehicle while intoxicated
in a public place.

We review the sufficiency of the evidence in this case
under a rigorous and proper application of the legal sufficiency standard of Jackson
v. Virginia, 443 U.S. 307 (1979).  Brooks v. State, 323 S.W.3d 893,
906 (Tex. Crim. App. 2010) (plurality op.); Pomier v. State, 326 S.W.3d
373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  When reviewing the
sufficiency of the evidence, we view all of the evidence in the light most
favorable to the verdict to determine whether the fact-finder was rationally
justified in finding guilt beyond a reasonable doubt.  Brooks, 323
S.W.3d at 899.  This court does not sit as a thirteenth juror and may not
substitute its judgment for that of the fact-finder by reevaluating the weight
and credibility of the evidence.  Id. at 901–02, 905; see also Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We defer to the
fact-finder’s resolution of conflicting evidence unless the resolution is not
rational.  Brooks, 323 S.W.3d at 902 n.19, 907; Pomier, 326
S.W.3d at 378.

A person commits the offense of driving while
intoxicated if that “person is intoxicated while operating a motor vehicle in a
public place.”  Tex. Penal Code § 49.04(a). 
One is considered intoxicated if he does not have the normal use of mental or
physical faculties by reason of the introduction of alcohol, a controlled
substance, a drug, a dangerous drug, a combination of those substances or any
other substance into the body or by having an alcohol concentration of 0.08 or
more in his breath, blood, or urine.  See id. § 49.01(2)(A)-(B). 
A conviction for driving while intoxicated may be supported solely by
circumstantial evidence, which is as probative as direct evidence.  Kuciemba
v. State, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).  

1.     
Operating motor vehicle while intoxicated

In his first and third issues, appellant contends that
the State failed to establish that he was operating a motor vehicle while
intoxicated because law enforcement officers did not observe appellant
operating a motor vehicle and the State did not present evidence of “how
recently the vehicle was driven” or “how much time elapsed between the accident
and arrival of law enforcement authorities.”  Appellant further contends that
the State did not prove he was intoxicated because he did not take a breath
test, no open container of alcohol was found in the vehicle, no injuries were
sustained by appellant or others, and the accident did not involve another vehicle
or result in a collision.  We address these two issues together.

The State was required to present sufficient evidence to
show appellant was the operator of the vehicle and, although the State was not
required to establish the precise time of an accident or of the appellant’s
driving, it was required to show a temporal link between appellant’s
intoxication and his driving.  See Kuciemba, 310 S.W.3d at 462; Scillitani
v. State, — S.W.3d —, 2011 WL 2448371, at *3 (Tex. App.—Houston [14th
Dist.] June 21, 2011, no pet. h.).  The State presented the following evidence
that appellant operated the motor vehicle shortly before the first officer
found him, while he was intoxicated: (1) within two minutes of receiving the
radio dispatch, the officer found a vehicle matching the broadcast’s
description that was registered to appellant; (2) when the officer arrived at
the scene, appellant, the only occupant of the vehicle, opened the truck’s door
and slid from the driver’s seat to the ground; (3) no one else was standing
near the truck at that time; (4) the truck appeared to have struck the
curb and spun into the yard, leaving deep ruts; (5) there were no skid marks on
the street; (6) the truck’s engine was still warm when appellant slid out of
the driver’s seat; (7) appellant was unresponsive to the officer’s questions
and unable to stand without assistance or speak intelligibly; (8) appellant
could not locate his driver’s license in his wallet; (9) appellant smelled
strongly of alcohol, slurred his speech, and squinted his eyes so that they
were almost closed; (10) appellant passed out in the back of the squad car
and was incapable of taking onsite field sobriety tests; (11) when taken to the
station, appellant then failed three field sobriety tests; and (12) when
appellant was asked whether he had been drinking and driving, he replied, “I
think so.”

The following facts demonstrate that appellant was the
driver of the vehicle: the officer found a truck that matched the description
of a vehicle being driven recklessly on Gessner within two minutes of receiving
the radio dispatch; the vehicle was registered to appellant; appellant was the
only occupant of the vehicle and slid from the driver’s seat onto the ground;
no one else was near the vehicle; the vehicle’s engine was still warm when the
officer discovered it; and appellant later admitted that he thought he had been
drinking and driving.  The jury reasonably could have inferred from these facts
that appellant was driving the truck and, therefore, operating a motor vehicle
when it spun onto the lawn.  See Scillitani, 2011 WL 2448371, at
*5 (holding jury could have inferred from facts surrounding single-vehicle
accident that appellant was intoxicated when he drove vehicle); Weems v. State,
328 S.W.3d 172, 177 (Tex. App.—Eastland 2010, no pet.) (concluding that
evidence was legally sufficient to show appellant was driving vehicle when it
was a vehicle he typically drove and he had it on night of accident, he was
found four-tenths of a mile from accident in rural area, and police officers
and EMS personnel did not see anyone else at accident scene or in surrounding
area); Turner v. State, 877 S.W.2d 513, 515–16 (Tex. App.—Fort Worth
1994, no writ) (finding sufficient evidence that appellant drove vehicle when
he was found standing next to vehicle within minutes of city power outage
caused by damage to transformer in path of vehicle; steam was spewing from
under hood of vehicle, indicating accident had just happened; and accident
happened late at night so that there were no other possible drivers seen in the
area).  

The foregoing and the following facts likewise support a
temporal link between appellant’s driving and his intoxication that the jury
reasonably could have inferred: the officer found the truck on the lawn within
two minutes after the truck matching the description in the radio dispatch was
reportedly seen driving recklessly on the street adjacent to the lawn; appellant
still occupied the truck; it had obviously struck the curb and spun into the
yard, leaving deep ruts; there were no skid marks on the street, which
indicated appellant did not apply his brakes; when the officer found appellant,
he was unresponsive to the officer’s questions, unable to stand without
assistance, and incoherent, could not locate his driver’s license in his
wallet, smelled strongly of alcohol, slurred his speech, and squinted his eyes
so that they were almost closed; appellant passed out in the back of the squad
car and was incapable of taking onsite field sobriety tests; and appellant
failed three field sobriety tests that were administered later at the station. 
See, e.g., Kuciemba, 310 S.W.3d at 462–63 (noting that person’s
presence in driver’s seat supports inference that accident had occurred short
time previously and “[b]eing intoxicated at the scene of a traffic accident in
which the actor was a driver is some circumstantial evidence that the actor’s
intoxication caused the accident, and the inference of causation is even
stronger when the accident is a one-car collision with an inanimate object”); Scillitani,
2011 WL 2448371, at *1, 3–5 (holding that evidence was sufficient to support
inference of temporal link between appellant’s driving and intoxication when
officer found vehicle resting in ditch which appellant admitted driving and
explained that he did not know how he lost control of vehicle; there were no
skid marks on road, which indicated appellant’s failure to apply brakes; and appellant
smelled of alcohol, showed signs of intoxication in two of three field sobriety
tests, and failed preliminary breath test).

Given the ample evidence of appellant’s intoxication
under these facts, we further find without merit appellant’s argument that the
State failed to prove that appellant was intoxicated because he did not take a
breath test, no open container of alcohol was found in the vehicle, no injuries
were sustained by appellant or others, and the accident did not involve another
vehicle or result in a collision.  See Cotton v. State, 686 S.W.2d 140,
142–43 & n.3 (Tex. Crim. App. 1985) (noting evidence of intoxication may
include, among other things, slurred speech, bloodshot eyes, the odor of
alcohol on the person, and unsteady balance or a staggered gait).  In addition
to the above referenced factors that support a finding of intoxication, all
three officers testified that appellant had lost the normal use of his mental
and physical faculties due to alcohol or some sort of depressant and was thus
intoxicated, which is evidence of intoxication.  See Henderson v.
State, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d)
(“The testimony of a police officer that an individual is intoxicated is
probative evidence of intoxication.”).  Appellant’s refusal to take a breath
test, moreover, may be used as evidence of guilt.  See Tex. Transp. Code § 724.061; Finley
v. State, 809 S.W.2d 909, 913 (Tex. App.—Houston [14th Dist.] 1991, writ
ref’d).  Finally, the jury viewed the video showing appellant’s actions during
his interview at the police station and therefore may have reasonably concluded
from it that appellant was intoxicated.  See Russell v. State, 290
S.W.3d 387, 396–97 (Tex. App.—Beaumont 2009, no pet.) (“[T]he videotape at the
scene of the stop allowed the jury to observe Russell and whether he had the
normal use of his faculties . . . .”).  We hold that there was ample evidence
supporting both that appellant was the operator of the vehicle and that he operated
it shortly before the first officer found him while he was intoxicated.  

2.      In
a public place

In his second issue, appellant contends that the State
did not establish he operated a motor vehicle in a public place while
intoxicated because (1) no evidence showed when the accident occurred or how
recently the vehicle was driven, (2) no witnesses saw appellant operate his
motor vehicle when the accident occurred, and (3) the vehicle was not on a
public street when the officer arrived.  We disagree.

A public place is “any place to which the public or a
substantial group of the public has access and includes, but is not limited to,
streets, highways, and the common areas of schools, hospitals, apartment
houses, office buildings, transport facilities, and shops.”  Tex. Penal Code § 1.07(a)(40).

We have already held that there was legally sufficient
evidence to show that the accident occurred shortly before the officer arrived
based, in part, on these facts: (1) appellant’s truck matched the radio
dispatch’s description of a vehicle being driven recklessly on Gessner; (2) the
officer discovered appellant in his truck in a lawn off Gessner within two
minutes after the radio dispatch; (3) the yard had deep tire ruts indicating
that the vehicle had spun into the yard; and (4) the truck’s engine was still
warm.  The officer also observed that the truck “[a]ppeared to have struck the
curb on the east side of Gessner and spun up to the front yard” and it was
facing the street.  We hold that this is sufficient evidence from which the
jury reasonably could infer that appellant was operating his vehicle on
Gessner, a public street, and then struck the curb and spun into the yard.  See
Banda v. State, 890 S.W.2d 42, 52–53 (Tex. Crim. App. 1994) (holding trial
court could infer that appellant appeared in public place and there was
probable cause to arrest appellant for public intoxication when appellant was
caught in side yard of private residence after he had climbed over fence and
tried to escape through adjoining neighbors’ yards); Loera v. State, 14
S.W.3d 464, 468 (Tex. App.—Dallas 2000, no pet.) (holding when appellant showed
up in sister’s driveway with his bike, evidence was sufficient to prove the
element of “public place,” in part, because trial court could reasonably infer
appellant used public road or street to reach his destination).

The State urges us to overrule a portion of our previous
decision, Commander v. State, 748 S.W.2d 270 (Tex. App.—Houston [14th
Dist.] 1988, no writ), in which we stated, “A private residence is not a public
place, nor has the yard or driveway of private a [sic] residence ever been
construed as such,” id. at 271, and hold that the front yard in which
the officer found appellant was a public place under the circumstances.  The overruling
of this court’s precedent would require the en banc court.  But we need not consider
that possibility in this instance, as we have held that the jury could have
reasonably inferred from the circumstantial evidence that appellant was driving
on Gessner, a public street, within minutes before the officer discovered him
in the yard.  Considering that the court in Commander limited its
holding to “the limited circumstances presented to this court,” id. at
272, and the Court of Criminal Appeals has recognized that a private residence,
under the right circumstances, may be a public place, see Banda,
890 S.W.2d at 52, we note that the Commander case does not stand for the
broad proposition that a private yard can never be considered a public place
for purposes of the public intoxication or DWI statute.[3]  

In the Commander case, an officer saw the
defendant leaning against a van in a private driveway.  748 S.W.2d at 272.  The
defendant’s eyes were glassy, he smelled of alcohol, and he seemed unsteady.  Id. 
This court held that “under the limited circumstances presented” the officer
did not have sufficient probable cause to arrest the defendant for public
intoxication.  Id.  The court acknowledged, however, that there may be
sufficient probable cause to arrest a person on private property for public
intoxication under the right circumstances.  See id. at 271–72.  By way
of example, the court cited United States v. Fossler, 597 F.2d 478 (5th
Cir. 1979), in which the Fifth Circuit upheld the validity of an arrest for
public intoxication after the defendant had been seen driving erratically down the
street and was found moments later leaning against his car in the middle of
someone’s yard, obviously intoxicated.  Id. at 271.  The court
recognized, “[u]nlike the facts in Fossler, the record before this court
does not support a finding that [the officer] had probable cause to arrest
appellant.”  Id. at 272.  We note that the facts of this case are more
akin to the facts in Fossler than the facts in Commander.

The Court of Criminal Appeals, moreover, has acknowledged
“[a] place may be a public one or not according to the circumstances.”[4]  Banda,
890 S.W.2d at 52.  Based on this pronouncement by the Court of Criminal Appeals
and express language in Commander, we believe that the holding in Commander—that
the private driveway where the defendant was discovered was not a public place
under the statute—was limited to the specific facts of that case and would not
preclude a future finding by this court that certain portions of a private
residence may be considered a public place under the right circumstances.  

For the preceding reasons, we overrule appellant’s first
through third issues.

Alleged Jury Charge Error

In his fourth issue, appellant contends that the jury
charge improperly expanded upon the allegations in the information by including
one of the statutory definitions of intoxication in the charge but not in the
information.  Even though appellant’s trial attorney did not preserve error on
this issue by objecting, appellant contends that we should reverse because the
error resulted in egregious harm that deprived appellant of due process, due
course of law, and a fair and impartial trial.  The State asserts that there
was no error in the jury charge and thus we need not reach the issue of whether
error caused egregious harm.  We agree with the State.

We review jury charge error on appeal as follows.  We first
determine whether error exists in the charge.  Hutch v. State, 922
S.W.2d 166, 170 (Tex. Crim. App. 1996).  Only then do we determine whether
sufficient harm was caused by the error to require reversal.  Id. at
170–71.  When charge error is not preserved, the degree of harm required to
merit reversal is egregious harm.  Id. at 171.  The type of intoxicant, as
defined by statute, is not an element of the DWI offense and thus need not be
alleged in the information.  See State v. Barbernell, 257 S.W.3d
248, 256 (Tex. Crim. App. 2008) (holding information provided appellant with
adequate notice even though it did not contain either statutory definition of
“intoxicated” and stating “the definitions of ‘intoxicated’ . . . are
evidentiary and therefore do not need to be alleged in a charging instrument”
to provide a defendant with sufficient notice); Gray v. State, 152
S.W.3d 125, 132 (Tex. Crim. App. 2004) (“[T]he substance that causes
intoxication is not an element of the offense.  It is not the forbidden
conduct, the required culpability, any required result, or the negation of any
exception to the offense.  Instead, it is an evidentiary matter.”).  

Here, the information alleged only that appellant “[d]id
then and there unlawfully operate a motor vehicle in a public place while
intoxicated”; it did not identify the alleged intoxicant or indicate on which
of two statutory definitions of intoxication the State would rely—either intoxication
by loss of the normal use of mental and physical faculties or by blood alcohol
content.  See Tex. Penal Code § 49.01(2)(A)–(B)
(defining “Intoxicated” either as “not having the normal use of mental or
physical faculties by reason of the introduction of alcohol, a controlled
substance, a drug, a dangerous drug, a combination of two or more of those
substances, or any other substance into the body” or “having an alcohol
concentration of 0.08 or more”).  Appellant filed a pretrial motion to quash
the information based in part on its failure to specify the intoxicant, which
the trial court denied.  The trial court included the statutory definition of
intoxication by loss of the normal use of mental or physical faculties in the
jury charge.  

Appellant argues that, under Rodriguez v. State, 18
S.W.3d 228 (Tex. Crim. App. 2000), the jury charge improperly expanded on the
allegations set forth in the information by authorizing conviction on a theory
not alleged in the information, specifically that appellant was intoxicated
either by alcohol alone or by a combination of unknown drugs and alcohol.  The Rodriguez
case, however, is distinguishable from the facts of this case.  In that case, the
information alleged intoxication by alcohol.  Id. at 229.  At
trial, defense evidence showed that the appellant had been taking a cold
medication that made him drowsy.  Id.  The jury charge permitted the
jury to convict if it found either that the defendant was intoxicated by
alcohol alone or by a combination of unknown drugs and alcohol.  Id. at
230.  The court of criminal appeals held that the charge improperly expanded on
the allegations set forth in the information and authorized a conviction on a theory
not alleged in the charging instrument.[5] 
See id. at 232; see also Gray, 152 S.W.3d at 130.  Here, the
information does not limit itself by alleging the intoxicant: it merely alleges
that appellant was intoxicated.  

This case is more akin to the Barbernell case in
which the information did not include the definition of intoxication that it
intended to prove at trial.  See Barbernell, 257 S.W.3d at 250, 256 (“[T]he
information, though it did not allege either definition of ‘intoxicated,’
provided Barbernell with adequate notice, and the court of appeals erred to
conclude otherwise.”)  We hold that the information in this case provided
appellant with adequate notice of the charges against him.  Because we find no
error in the jury charge, we do not reach the issue of whether error resulted
in egregious harm.  

We overrule appellant’s fourth issue.

Conclusion

Having determined that the trial court did not commit
error, we overrule appellant’s issues on appeal.  The judgment of the trial
court is affirmed.

 

                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel consists of Justices Frost, Jamison, and
McCally.

Do Not Publish —
Tex. R. App. P. 47.2(b).









[1]
The officer testified that the Romberg balance test helps determine whether a
person’s “internal clock” is slow or fast and how much a person sways when
standing, as certain drugs such as alcohol affect a person’s internal timing
and balance. 





[2]
A D.I.C. 24 form indicates that a suspect has been given the statutory warning
regarding the consequences of refusing a breath test, which include the
possible suspension of one’s driver’s license.  The officer testified that he
gave appellant the statutory warning, both verbally and in writing, but
appellant refused to sign the form.





[3]
See, e.g., Loera v. State, 14 S.W.3d 464, 469 (Tex. App.—Dallas
2000, no pet.) (“While the incident in Commander occurred in the
driveway of a private residence, the decision itself did not turn on the fact
that the location was a residence.  The decision, instead, was based on the
lack of evidence to show the defendant had ever driven or intended to drive the
[van] parked in the driveway or to show he was a danger to himself or the public.”). 






[4]
In the Banda case, the defendant argued that there was no probable cause
to arrest him for public intoxication because he was found in the side yard of
his cousin’s private residence.  Banda v. State, 890 S.W.2d 42, 52 (Tex.
Crim. App. 1994).  Before arresting the defendant, the officer had seen him
climb over a fence and disappear through neighbors’ backyards.  Id.  The
officer’s subsequent search led him to believe that the defendant had attempted
to flee out of the neighborhood.  Id.  The officer eventually discovered
that the defendant had returned to his cousin’s residence and arrested him
there.  Id.  The court held “[t]o hold that there was no probable cause
to arrest [the defendant] for public intoxication . . . would be
unreasonable.”  Id.  





[5]
The Rodriguez court recognized a subtle distinction between the facts of
Rodriguez and cases in which an information alleged intoxication by
alcohol and the charge allowed conviction only if the jury found that the
defendant had been intoxicated by alcohol either alone or in combination with a
drug that made him more susceptible to the alcohol.  Rodriguez v. State,
18 S.W.3d 228, 231–32 (Tex. Crim. App. 2000).  The cases falling into the
latter category did not involve a charge that improperly expanded on the
allegations in the information.  See Gray v. State, 152 S.W.3d 125, 130
(Tex. Crim. App. 2004) (citing Rodriguez, 18 S.W.3d 228; Sutton v.
State, 899 S.W.2d 682 (Tex. Crim. App. 1995); Heard v. State, 665
S.W.2d 488 (Tex. Crim. App. 1984) (analyzing differences between cases)).  The
court also recognized in Gray that the law on this issue was in an
“uneasy state” when it decided Rodriguez.  Id.